# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN W. REIDEL, | ) 1:04cv5230 DLB |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S<br>) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) |
| Defendant. | ) |

## BACKGROUND

Plaintiff John W. Reidel ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed an application for disability insurance benefits on June 7, 2002. AR 80-82,

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On June 28, 2004, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

88-97. He alleged that he had been disabled since January 1, 1990, due to post traumatic stress disorder ("PTSD"). AR 89. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 62-65, 68-71, 72-74. On June 24, 2003, ALJ Michael Haubner held a hearing. AR 343-360. On July 23, 2003, ALJ Haubner found that Plaintiff was not disabled. AR 39-45. On January 14, 2004, the Appeals Council denied review. AR 4-6.

<u>Hearing Testimony</u>

On June 24, 2003, ALJ Haubner held a hearing in Fresno, California. Plaintiff appeared along with his attorney, Robert Christenson. AR 343.

Plaintiff testified that he was 56 years old at the time of the hearing. AR 340. He completed twelfth grade but did not graduate from high school because he was short on credits. AR 349-350. He also attended one year of college, but dropped out and entered the service. AR 350. He last worked in 1991 or 1992 doing ladder repair. AR 350. He received an honorable discharge from the military. AR 353.

Plaintiff testified that he did not receive any medical treatment between 1989 and 1996, and Plaintiff's attorney confirmed this. AR 353.

When questioned by his attorney, Plaintiff explained that he saw Dr. Velosa in 1989 and did not seek medical treatment again until 1996. AR 354. He stated that he did not seek treatment until 1996 because he never saw Dr. Velosa's report. AR 354. He stated that he would have seen doctors during that time if he knew of Dr. Velosa's diagnosis. AR 355. He testified that he had a problem since he came back from Vietnam, but got to the point where he couldn't handle it anymore in 1996 and decided to seek treatment. AR 355.

He testified that he was the same in 1996 as he was in 1989. AR 355. His treatment in 1996 helped "some" because they gave him medication to help him sleep. AR 356. He has a 100% disability rating from the VA due to his PTSD. AR 356. Although this rating was awarded in March 2000, he received back payments to 1996, when he originally filed his claim for benefits. AR 356. He could not receive payments back to 1989 because the VA could only go back to the date he filed his claim. AR 357. He receives $2100 per month from the VA. AR

359.

At the conclusion of the hearing, Plaintiff reiterated that if he knew of the 1989 diagnosis, he would have sought help at that time. AR 359.

Medical Evidence

On February 4, 1989, Plaintiff was examined by Luis H. Velosa, M.D., in connection with his application for social security or supplemental security income benefits. AR 16-18, 139. Plaintiff told Dr. Velosa that he spent 14 months in Vietnam, eight of which he spent in active combat. AR 139. Plaintiff reported experiencing nightmares and flashbacks since his return from Vietnam. AR 140. Dr. Velosa found evidence of an affective disorder and acute distressing episodes, flashbacks and nightmares relating to Vietnam. AR 140. Dr. Velosa also found chronic dysphoric mood, vegetative signs of depression and suicidal ideations. AR 141.

Dr. Velosa concluded:

> On the basis of the psychiatric examination, I find [Plaintiff] suffering from a psychiatric disorder best classified as a post traumatic stress disorder, secondary to his experience in the war, and a major depression, recurrent, severe without psychosis. His psychiatric symptoms, as well as his physical problems, are greatly limiting his overall psychosocial and occupational functioning. The claimant is having difficulties in his cognition, and he will have severe difficulties following simple tasks. The claimant will have severe difficulties withstanding the pressures associated with the everyday working environment. He also will have severe difficulties relating with his fellow workers. I advised him to seek out psychiatric treatment at the local mental health facility. Prognosis is poor.

AR 141.

Plaintiff was treated at the Veterans Affairs Hospital from July 7, 1996, through May 20, 2003. AR 160-259, 318-335.

Plaintiff received treatment from Gail Hendershot, MSSW, LCSW, from August 1996 through February 2003. AR 265-306.

Plaintiff received treatment from Gail Gaffney, LCSW, from September 1996 through March 1997. AR 307-317. On September 6, 1996, Ms. Gaffney wrote an assessment and recommendation for therapy, based on a diagnosis of PTSD and dysthymia. AR 312-317.

On June 15, 1998, Ms. Hendershot indicated that Plaintiff was moderately to severely limited in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. AR 294-296.

On August 1, 2002, State Agency physician Archimedes Garcia, M.D., completed a Psychiatric Review Technique Form and concluded that there was insufficient evidence prior to Plaintiff's date last insured (March 31, 1991) to determine if Plaintiff was disabled. AR 142-156. State Agency physician Murray Mitts, M.D., came to the same conclusion on October 17, 2002.

On February 11, 2003, Ms. Hendershot completed a Mental Assessment form and reported moderate to marked limitations in understanding and memory, sustained concentration and persistence, social interaction and adaptation. AR 260-263. She opined that these restrictions became effective in "1970-71." AR 263. In an attachment, she wrote that she first began providing psychotherapeutic services to Plaintiff on August 21, 1996. AR 265. He has continuously presented with the symptoms of PTSD, panic disorder and depression, "relevant to the various traumas he endured in his life, including those that occurred while he served in Vietnam." AR 265.

ALJ's Findings

The ALJ first explained that Plaintiff must establish disability on or before March 31, 1991, his date last insured. AR 43. Although the ALJ found that Plaintiff currently has significant mental limitations, the record did not demonstrate that his disability began prior to March 31, 1991. AR 43. The ALJ reviewed Dr. Velosa's 1989 report and found that his limitations would have prevented him from performing substantial gainful activity at that point in time. AR 43. However, the ALJ explained that this was a one-time evaluation and that Plaintiff was not able to establish a disability for 12 continuous months prior to March 31, 1991. AR 43.

The ALJ therefore determined that Plaintiff did not have a severe impairment and was not disabled. AR 43.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence means "more than a mere scintilla,"

*Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of disability; and (2) did not have an impairment or a combination of impairments that is considered

---

[3] All references are to the 2000 version of the Code of Federal Regulations unless otherwise noted.

1  "severe."

2  Plaintiff argues that (1) the ALJ erred in finding that there is insufficient evidence as of
3  the March 1991 date last insured; (2) the ALJ failed to comply with SSR 83-20 by not calling on
4  a medical advisor; and (3) the ALJ erred in finding Plaintiff not credible.

## DISCUSSION

A.  <u>Evidence of Disability</u>

Plaintiff argues that the ALJ erred in finding that there was insufficient evidence to establish a disability prior to March 31, 1991, Plaintiff's date last insured. Plaintiff does not contend, however that the date last insured was incorrect. Rather, Plaintiff argues that Dr. Velosa's report, Plaintiff's testimony that his condition has remained the same, and the other evidence in the record suggesting that Plaintiff's condition has been unchanged provide evidence of disability prior to March 31, 1991.

Plaintiff bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512. A person is disabled if his impairments are severe and meet the durational requirement of twelve months. 20 C.F.R. §§ 404.1505, 404,1520(a). A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c).

In the context of disability insurance benefits, an individual who applies for benefits after expiration of insured status, for disability that prevents substantial gainful activity at the time of the application, must show that the current disability has existed continuously since some time on or before date last insured lapsed. *Flaten v. Sec'y Health and Human Serv.*, 44 F.3d 1453, 1458 (9th Cir. 1995).

The ALJ acknowledged that, based on Dr. Velosa's report, Plaintiff was likely prevented from performing substantial gainful activity during that time (i.e., 1989). Other than Dr. Velosa's report, however, there were no medical records for the relevant time period. During the hearing, Plaintiff admitted that he did not seek medical treatment again until 1996. AR 354. The ALJ therefore concluded that, despite Dr. Velosa's findings, the medical evidence was insufficient to show 12 continuous months of disability prior to his treatment inception date in

1996. AR 43.

It is the ALJ's duty, not that of the Court, to interpret the medical evidence. The Court cannot substitute its judgment for that of the ALJ, but must affirm the ALJ's decision where, as here, it is supported by the record. Given the undisputed gap in treatment, the ALJ's finding that there was insufficient evidence to show that Plaintiff was disabled for 12 continuous months prior to his date last insured was supported by substantial evidence. The ALJ thoroughly reviewed the medical evidence and explained that the 1989 report was based on a one-time evaluation. AR 43. He also noted that Plaintiff did not receive treatment again until 1996. AR 43. These facts are undisputed.

Plaintiff points to his testimony that his condition remained the same since 1989, Dr. Velosa's poor prognosis, and Gail Hendershot's observations that Plaintiff's symptoms were the same in 1996 as they were in 1989. However, as the ALJ noted, Ms. Hendershot's opinion was based on Plaintiff's self-report, as she did not begin treating Plaintiff until 1996. AR 43. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1999) (upholding the ALJ's rejection of check-the-box form by doctor who did not examine claimant until over one year after the expiration of date last insured).[4] The ALJ also concluded, as will be discussed in more detail below, that Plaintiff's credibility was poor. AR 43-44. In coming to his conclusion, the ALJ relied on the opinions of two State Agency physicians that the evidence was insufficient. AR 43. Based on these findings, the ALJ's determination was supported by sufficient evidence.

B.   SSR 83-20

Plaintiff next argues that the ALJ erred by not calling on a medical advisor to determine the onset date of Plaintiff's impairments, pursuant to SSR 83-20. Specifically, Plaintiff contends that a medical advisor was necessary to determine whether an onset date of February 27, 1989, can be inferred from Dr. Velosa's report, which included a "poor" prognosis, and the medical

---

[4] The only current medical evidence Plaintiff cites in support of his position that he was disabled prior to 1989 is opinion evidence from licensed clinical social workers Ms. Hendershot and Ms. Gaffney. They are not, however, "acceptable medical source[s]." 20 C.F.R. §§ 404.1513(a), 416.913(a). Instead, they are considered to be "other source[s]" whose opinion the ALJ may give less weight than that of an acceptable medical source. 20 C.F.R. §§ 404.1513(d), 416.913(d); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).

1  evidence beginning in 1996.

2  SSR 83-20 discusses techniques for determining the onset date of disability. SSR 83-20 explains that the individual's allegation as to onset date, the work history, and the medical evidence should be evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence.

SSR 83-20 further provides,

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

A careful reading of SSR 83-20 indicates that the duty to call on a medical advisor arises only when an earlier onset date can be inferred, an inference which must have a legitimate medical basis. Based on the medical record before him, however, the ALJ determined that he *could not* infer an earlier onset duty. AR 43. This finding does not trigger the duty to call a medical advisor.

C.   Plaintiff's Credibility

Finally, Plaintiff contends that the ALJ erred in finding him not credible. He specifically disagrees with the ALJ's finding regarding Plaintiff's failure to seek medical treatment and the discrepancy in Plaintiff's education.

Where medical evidence is inconclusive of disability, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Unlike most credibility issues, the issue here was not Plaintiff's testimony about the severity of his impairment. Rather, Plaintiff's credibility was relevant because of his testimony about his onset date in the absence of medical evidence.

In finding that there was insufficient evidence to determine that Plaintiff had a disability prior to his date last insured, the ALJ found Plaintiff's credibility poor. The ALJ pointed to

1  Plaintiff's testimony that his condition had remained the same, but that he failed to seek medical
2  treatment until 1996.  The ALJ also noted that Plaintiff explained that had he known the 1989
3  evaluation diagnosed PTSD, he would have sought treatment.  AR 43-44.  The ALJ found this
4  contention unreasonable, given Plaintiff's earlier admission that he did not feel his condition was
5  bad enough to seek treatment before 1996.  AR 44.

6  Inadequately explained failure to seek medical treatment is a proper consideration in
7  evaluating a claimant's credibility.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Here,
8  as the ALJ explained, Plaintiff testified that he would have sought treatment had he been aware
9  of the diagnosis in Dr. Velosi's 1989 report.  However, it's likely that had his condition been
10 severe enough, he would have sought treatment regardless of his knowledge of Dr. Velosi's
11 diagnosis.  Additionally, Plaintiff testified that when he sought treatment in 1996, it was only
12 after he couldn't handle it anymore.  AR 355.  At best, his testimony creates an ambiguity as to
13 his condition, and the ALJ was entitled to resolve this ambiguity.

14 The ALJ next points to the discrepancy over Plaintiff's education as detracting from his
15 credibility.  Plaintiff testified that he did not graduate from high school, to which the ALJ
16 questioned him regarding his Disability Report, which stated that Plaintiff completed high school
17 and one year of college.  AR 349-350.  Plaintiff explained that he completed the twelfth grade,
18 but did not graduate because he did not have enough credits.  AR 350.  He further testified that
19 after high school, he attended San Jose City College for a couple of semesters but dropped out
20 and was drafted.  AR 350.

21 As Plaintiff points out, the question on the Disability Report asked Plaintiff to check the
22 highest grade of school completed, to which he checked "12," plus one year of college.  AR 95.
23 The discrepancy appears to be a misunderstanding on the ALJ's part that Plaintiff somehow
24 represented that he graduated college, when in reality, he did not.  Yet, according to the evidence,
25 Plaintiff has never maintained that he graduated but instead explains that he completed twelfth
26 grade.  Although in most instances completing twelfth grade means the student will graduate
27 high school, such is not the case here.  Plaintiff submitted his high school transcript in support of
28 his explanation.  AR 9-11.

1   Although a misunderstanding may have occurred, it does not change the sufficiency of
2   the ALJ's analysis. *See eg., Batson v. Barnhart*, 359 F.3D 1190, 1197 (9th Cir. 2004) (upholding
3   ALJ's credibility determination even though one reason may have been in error).  The main
4   problem with Plaintiff's testimony, and indeed, his disability application, was the lack of medical
5   treatment from 1989 to 1996.  As explained above, this factor alone was sufficient to question
6   Plaintiff's credibility.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff, John W. Reidel.

IT IS SO ORDERED.

**Dated:**   **July 26, 2005**                    /s/ Dennis L. Beck
3c0hj8                                                    UNITED STATES MAGISTRATE JUDGE